**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:08-cr-00056-RDB** |
| **FRANK KEITH GOODMAN,** | |
| **Defendant** | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (ECF 525, 583, 581, 591)**

**INTRODUCTION**

On July 2, 2007, Carl Lackl was murdered in front of his house and his young daughter. He was murdered because he was going to be a witness against Patrick Byers in a state murder case. Byers ordered the murder of Lackl from state prison. To effectuate his plan, Byers enlisted Defendant Frank Keith Goodman. Goodman did the rest. Goodman recruited a gang member to organize and execute the killing. Goodman set the price for the job. Goodman gave the gang member Lackl's address. Goodman supplied the ruse that would be used to lure Lackl out of his house. Goodman paid the fee after the murder took place. And Goodman relayed the news to Byers after it was done. As this Court noted at Goodman's sentencing, Goodman "set the whole process in motion" and served as Byers's "alter ego" on the street. ECF 394 at 31-33.

Byers and Goodman were later convicted at trial on seven charges, including conspiracy to use interstate communication facilities in the commission of a murder for hire, in violation of 18 U.S.C. § 1958, and conspiracy to murder a witness resulting in death, in violation of 18 U.S.C. § 1512. ECF 316. These charges carried mandatory life sentences. In imposing these sentences, this Court held that Goodman was "every much as responsible as Byers in terms of what occurred here." ECF 394 at 33. *Id.* This Court concluded that Goodman was "going to

spend the rest of [his] life in prison because [he was] involved in the slaughter [of Lackl]" and "an attack on the criminal justice system" by murdering a witness. *Id.* at 32.

Goodman now wants to avoid the consequences of his actions and his congressionally-mandated sentences. After serving just 18 years of his life sentences, Goodman is now seeking release and a time-served sentence under 18 U.S.C. § 3582(c)(1)(A). ECF 525, 583, 591. His request should be denied.

First, Goodman has failed to demonstrate any "extraordinary and compelling" circumstance which would demonstrate any entitlement to relief, as required by U.S.S.G. § 1B1.13. While he claims there is a disparity between his sentence and the sentences obtained by others in the case, including the shooter and other co-conspirators, there was a good reason for that: those receiving lesser sentences cooperated and testified at trial, as this Court noted at sentencing. ECF 394 at 33. Goodman, by contrast, continued to deny his offense conduct until the end, even after a jury found him guilty. Similarly, while he claims there are changes in sentencing law in terms of what his sentence might be were he convicted today, he is wrong again: the crimes for which he was convicted would still carry mandatory life sentences. Finally, while he principally leans on his rehabilitation in prison, Congress has made clear that rehabilitation alone is never enough for compassionate release. Because he has failed to demonstrate any "extraordinary and compelling" circumstances under § 1B1.13, the motion must be denied. *See United States v. Crawley*, 140 F.4th 165 (4th Cir. 2025) (affirming denial of compassionate release where defendant failed to satisfy requirements in § 1B1.13 to show an extraordinary and compelling circumstance for relief).

Second, even if Goodman could surmount the first hurdle in the compassionate release analysis, he has not and cannot prevail under the relevant factors under 18 U.S.C. § 3553(a). The

seriousness of these crimes, the need for just punishment, and the necessity of deterring others from similar conduct continue to warrant the life sentences that were originally imposed.  As this Court noted, Goodman set in motion the "slaughter" of Lackl.  It would do nothing for promoting respect for the law if Goodman's life sentence were cut down to time served after 18 years.  As the mother of Mr. Lackl indicated at sentencing, Byers and Goodman imposed the "death penalty" on Lackl.  ECF 394 at 26.  They therefore earned their life sentences.  They should be made to serve them.  The Court should deny Goodman's motion.  *See United States v. Centeno-Morales*, 90 F.4th 274, 281 (4th Cir. 2024) (affirming denial of compassionate release based on defendant's failure to carry burden on 3553(a) factors).

## FACTUAL BACKGROUND

### A.    Goodman Orchestrates The Murder Of Carl Lackl

On April 17, 2009, a jury convicted Goodman on seven counts, including:

(1) conspiracy to use interstate communication facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Count One);

(2) use of an interstate communication facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Count Two);

(3) conspiracy to murder a witness, resulting in death, in violation of 18 U.S.C. § 1512(a) (Count Three);

(4) murder of a witness, resulting in death, in violation of 18 U.S.C. § 1512(a) (Count Four);

(5) use and discharge of a firearm during and in relation to a crime of violence, causing death by murder, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Five);

(6) use and discharge of a firearm during and in relation to a crime of violence, causing death by murder, in violation of 18 U.S.C. § 924(j) (Count Six);

(7) conspiracy to use and discharge a firearm during and in relation to a crime of violence, causing death, in violation of 18 U.S.C. § 924(o) (Count Seven).

ECF 316 (Verdict Sheet); ECF 357 (Judgment).

These charges stemmed from the murder of Carl Lackl. The evidence at trial demonstrated that Lackl was the prosecution's primary witness in the upcoming state murder trial against Patrick Byers for the March 2006 murder of Larry Haynes. *See United States v. Byers*, 649 F.3d 197, 201 (4th Cir. 2011). Specifically, the evidence presented at trial demonstrated that, on March 4, 2006, Byers murdered Kenneth Haynes. *Id.* He was charged with first-degree murder in state court. *Id.* As trial was approaching, Byers learned that one of the key eyewitnesses to the Haynes murder was Carl Lackl. *Id.*

Accordingly, from jail, Byers enlisted the assistance of Frank Goodman to murder Lackl. In June 2007, Goodman offered a Bloods gang member, Marcus Pearson, $2500 to kill Lackl for Byers, explaining that Byers was facing trial on murder charges and needed to eliminate Lackl as a witness. *Id.* at 203. Goodman provided Pearson with Lackl's address and phone number, and informed Pearson that Lackl was selling a used Cadillac. *Id.* Pearson then used that information to lure Lackl out of his house by contacting Lackl's phone number on the ruse that he was interested in buying the Cadillac. *Id.* On July 2, 2017, Pearson and his fellow gang members, including Jonathan Cornish and Michael Randle, drove by Lackl's house. *Id.* When Lackl approached the front passenger window where Cornish was sitting, Cornish shot Lackl twice while he was standing and a third time after he fell to the ground. *Id.* at 204.

Shortly after the murder, Pearson contacted Goodman to collect. *Id.* Goodman paid Pearson $2200. *Id.* Pearson contacted Byers and told him that Lackl was dead. *Id.* Other

evidence showed that Goodman made several phone calls to Byers on the day of the murder as well.  *Id.*

**B.    Goodman Is Sentenced To Life In Prison**

On July 17, 2009, this Court sentenced Goodman to multiple life sentences.  ECF 357. Specifically, this Court sentenced Goodman to:

(1) concurrent life sentences for Counts 1 and 2;

(2) concurrent life sentences for Counts 3 and 4, to consecutive to the life sentences in Counts 1 and 2;

(3) ten years in prison for Count 5, to run consecutive to the life sentences in Counts 1, 2, 3, and 4;

(4) twenty-five years in prison for Count 6, to run consecutive to the sentences in Counts 1, 2, 3, 4, and 5; and

(5) 240 months in prison to run concurrent to Counts 1 and 2.

ECF 357.

In imposing this sentence, this Court made several critical findings.  First, this Court noted that it had "no doubt" about Goodman's guilt and held that the jury did the "right thing" in returning guilty verdicts.  ECF 394 at 29-30.  Second, the Court noted that despite the jury findings, Goodman continued to deny his offense conduct.  *Id.*  Indeed, during allocution, Goodman stated (falsely) that, "I had nothing to do with [Lackl's] murder."  *Id.* at 27.  This Court noted that it watched the videotape of Goodman's post-arrest interview with law enforcement, and observed that Goodman had adopted a position of "arrogance and defiance of law enforcement in this city and in-your-face attitude" and simply "lied and lied and lied" about his alleged non-involvement.  *Id.* at 21-22.  Third, this Court held that Goodman served as

"Byers' alter ego" and "set the process in motion" to murder Lackl on behalf of Byers.  *Id.* at 31.

In this way, the Court held that Goodman "should get exactly what Byers got . . . . you're just

every much as responsible as Byers in terms of what occurred here."  *Id.* at 33.  Fourth, the Court

addressed Goodman's argument at sentencing that the shooter (Cornish) and his accomplice

(Randle) were not getting life sentences:  "Some others you've noted don't get life in prison

without parole.  That's because they cooperated and came forward."  *Id.* at 33.  Finally, the Court

noted that its sentence was required not just by statute, but also to send a deterrent message about

the consequences of murdering a witness and assaulting the criminal justice system.  *Id.* at 32.

Specifically, this Court stated that, "you're going to spend the rest of your life in prison because

you're involved in the slaughter [of Lackl] and involved in an attack on the criminal justice

system when a witness is murdered."  *Id.*

Goodman's convictions and sentences were affirmed on appeal.  *Byers*, 649 F.3d at 201.

Goodman later filed a motion to vacate alleging ineffective assistance, ECF 415, which this

Court denied, ECF 468.

**C.     Goodman Now Seeks A Time-Served Sentence**

On November 22, 2021, Goodman filed a *pro se* motion for compassionate release.  ECF

525.  He later filed supplemental materials in support of this motion.  ECF 559, 567, 569, 573,

575-576.  On June 17, 2024, Goodman obtained counsel, which in turn filed a subsequent

supplemental brief, ECF 583, and several additional supplements, ECF 588-91.  In these filings,

Goodman seeks compassionate release on several grounds, including:  (1) the length of his life

sentence and alleged disparaties with what sentence he may receive today (ECF 525 at 11-12;

ECF 583 at 15-17); (2) discrepancies between the sentence Goodman received and the one

received by other co-conspirators (ECF 583 at 15-17); and (3) his alleged rehabilitation (ECF 525 at 4-5; ECF 583 at 18-20).

As detailed below, these grounds fail to satisfy the standard for what constitutes "extraordinary and compelling" circumstances under U.S.S.G. § 1B1.13.  And even if they did, Goodman's claims would still founder under the 3553(a) factors given the heinousness of his crime and the need for deterrence and to promote respect for the law.  As such, the motion should be denied.

## ARGUMENT

The government opposes Goodman's petition for release because he has failed to meet his burden.  Specifically, he has failed to demonstrate any legally and factually sufficient "extraordinary and compelling" reason for release.  Also, consideration of the 3553(a) factors do not support release.  For these reasons, the motion should be denied.

### A.    The Law Of Compassionate Release

As a general matter, Congress ordained that criminal sentences, once imposed, shall remain final and undisturbed. 18 U.S.C. § 3582(b); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010).  Congress provided, however, a narrow exception to that general rule in 18 U.S.C. § 3582(c)(1)(A).

To be eligible for relief under Section 3582(c)(1)(A), a defendant must satisfy the following elements: (1) the defendant must properly exhaust administrative remedies by seeking a remedy first with the Bureau of Prisons; (2) the defendant must establish that "extraordinary and compelling" reasons as defined by U.S.S.G. § 1B1.13 warrant release; (3) the relevant factors under 18 U.S.C. § 3553(a) must favor release; and (4) any grant of relief must be "consistent with" applicable policy statements by the U.S. Sentencing Commission.  *United States v. Malone*, 57

F.4th 167, 173 (4th Cir. 2023).  The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *United States v. Melvin*, 2023 WL 5974872 (4th Cir. Sept. 14, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)).  In construing the defendant's arguments, a court is precluded from "simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.' The problem with such an approach is that it renders the general rule of finality and the extraordinary-and-compelling-reasons requirement superfluous, void or insignificant."  *Melvin*, 2023 WL 5974872 (quoting *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2012)).  Rather, the focus of the compassionate release statute is on events and circumstances unforeseeable at the time of the original sentencing.  *See id.*

Compassionate release is wholly discretionary.  Congress provided that a district court "may" grant relief provided it finds the criteria are met, but is never required to do so.  18 U.S.C. § 3582(c)(1)(A).

**B.    Goodman Has Failed To Demonstrate Extraordinary And Compelling Circumstances**

The United States Sentencing Commission has promulgated a binding policy statement outlining the grounds which qualify as "extraordinary and compelling."  *See* U.S.S.G. § 1B1.13.[1] In pertinent part, this provision recognizes the following circumstances:

(1) certain medical circumstances of the defendant where the defendant is "suffering from a terminal illness" or where there is a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care" in prison;

---

[1] The Fourth Circuit has recently held that the current provisions of § 1B1.13 apply, even where, as here, the initial compassionate release motion was filed prior to their enactment.  *See Crawley*, 140 F.4th at 170.

(2) the age of the defendant where the defendant is at least 65 years old, is experiencing a

serious deterioration in physical or mental health because of the aging process, and has served at

least 10 years or 75 percent of his term of imprisonment;

(3) the family circumstances of the defendant, including the death or incapacitation of the

caregiver of the defendant's minor child or parent and there is no other caretaker;

(4) the defendant was the victim of abuse in prison;

(5) the defendant presents any other circumstance or combination of circumstances that,

when considered by themselves or together are similar in gravity to the other enumerated grounds

described above;

(6) the defendant has been given an "unusually long sentence" and has served more than

10 years and there has been a change in the law that creates a "gross disparity" in the sentence

rendered versus the sentence that would be imposed were the defendant sentenced today; and

*Id.*

Against these standards, Goodman's motion fails.  In his various filings, Goodman

appears to posit the following allegedly extraordinary and compelling circumstances: (1) the

length of his life sentence and alleged disparities with what sentence he may receive today (ECF

525 at 11-12; ECF 583 at 15-17); (2) discrepancies between the sentence Goodman received and

the ones received by other co-conspirators (ECF 583 at 15-17); and (3) his alleged rehabilitation

(ECF 525 at 4-5; ECF 583 at 18-20).  Each will be addressed in turn.

First, while Goodman claims that he "would likely be sentenced to a far lesser sentence

today," ECF 583 at 16, these arguments are inadequate.  The government surmises that Goodman

is attempting to trigger the provision of U.S.S.G. § 1B1.13(b)(6).  In full, this provision states as

follows:  "If a defendant received an unusually long sentence and has served at least 10 years of

the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

Assuming arguendo that Goodman can satisfy the criteria for an "unusually long sentence" and the requirement to serve more than 10 years, Goodman fails to identify any relevant "change in the law," much less one that creates a "gross disparity" with the sentence he would receive today. Goodman does not point to any specific change in the statutes under which he was charged. Nor does he cite any specific case that changed the law on sentencing in this area. Rather, he simply relies on very generalized sentencing data that indicates sentences for murder today are less than a life sentence. ECF 583 at 16. This is inadequate. For starters, Goodman was not convicted for "murder" per se. Rather, he was charged with using interstate facilities to accomplish a murder-for-hire scheme under 18 U.S.C. § 1958(a), and the killing of a witness, in violation of 18 U.S.C. § 1512(a), among other convictions. As this Court rightly indicated at sentencing, this killing was about more than simple murder; this was more egregious because it struck at the very core of the justice system itself by thwarting the ability of the government to present the truth to a jury. ECF 394 at 32 (calling the crime an "assault on the criminal justice system"). So, Goodman's murder statistics argument should be disregarded because it is comparing apples to oranges.

Moreover, Goodman's arguments fall short here because he has not and cannot point to any "change in the law" which creates a "gross disparity" in the sentence he would receive were he convicted today. In fact, there has been no change in the law; he would receive exactly the same sentence were he convicted today. This is because when he was convicted, Sections 1958

and 1512 carried mandatory life sentences.  ECF 394 at 29 (noting how the sentences were required by "statute").  It is the same today.  *See* 18 U.S.C. § 1958(a); 18 U.S.C. § 1512(a)(3)(A) (incorporating by reference penalties in 18 U.S.C. § 1111(b)).  Nor can Goodman claim any solace in his age at the time of his crimes.  *See* ECF 525 at 11.  While he claims he was a "juvenile," he was not.  He was 21 years old.  And in that circumstance, again, he would receive the same mandatory life sentence were he sentenced today for the same conduct.  Because he cannot point to any "change in law" that creates any disparity in how he would be sentenced today, Goodman's first argument fails to meet the test for extraordinary and compelling circumstances under 1B1.13. *See Crawley*, 140 F.4th at 172-73 (denying compassionate release because defendant failed to meet all the criteria for 1B1.13(b)(6)); *see also United States v. Bell*, 2024 WL 4404236 (10th Cir. Oct. 4, 2024) ("Because the district court did not err in concluding Mr. Bell would still be subject to a mandatory life sentence, it did not abuse its discretion in finding no extraordinary and compelling reason supports his release."); *United States v. Dire*, 2024 WL 4259871 (E.D. Va. Sept. 20, 2024) (denying compassionate release because defendant would still be subject to a mandatory term of life imprisonment if sentenced today, and hence could not claim a "gross disparity" based on any "change in law").

Second, Goodman's argument about disparities between the sentence he received compared to those of his co-defendants similarly fails.  For starters, this is not a ground recognized in 1B1.13.  There is no provision in the guideline which provides that alleged disparities between sentences among codefendants somehow count as extraordinary circumstances.  This alone means this ground fails.

But even taking the claim at face value, it still is meritless.  While Goodman rails at how the shooter (Cornish) received a 480-month sentence, and Pearson received 420 months, ECF

583 at 17-18, this Court has already explained the justification for the disparities in such sentences. At sentencing, this Court rightly indicated that Cornish and Pearson received significant, but less than life, sentences because they pled guilty and cooperated. ECF 394 at 33 ("Some others you've noted don't get life in prison without parole. That's because they cooperate and they came forward."). The Fourth Circuit and other appellate courts have recognized that sentencing disparities resulting from plea agreements and cooperation are perfectly permissible and justified. *See United States v. Susi*, 674 F.3d 278, 287-88 (4th Cir. 2012); *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011); *see also United States v. Fernandez*, 104 F.4th 420, 429 (2d Cir. 2024) (affirming denial of compassionate release motion because "'[t]here is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government.") (quoting *United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021)). Here, Goodman declined to enter a plea agreement and chose to go to trial. In contrast, each of the co-defendants cited in Goodman's motion received reduced sentences only after entering plea agreements and cooperating with the government. Because they are not similarly situated, any resulting sentencing disparity is neither improper nor unjustified under established precedent. Accordingly, Goodman's claim of sentencing disparity fails, as it overlooks the critical distinction between those who accept a plea deal, responsibility, and cooperate and those who do not.

Moreover, Goodman's argument also fails on the facts. While he tries to aver that he was just a "middleman" and his role was "close to superfluous," ECF 583 at 17, this Court found quite the opposite. This Court found that Goodman "set the whole process in motion." ECF 394 at 33. This Court held that Goodman was just as responsible as Byers. *Id.* And the facts bear

that out. Goodman hired the crew of Pearson and his fellow gang members. Goodman negotiated the price. Goodman relayed the ruse that would be used to lure Lackl into position. Goodman paid the fee after the job was done. As this Court noted, Goodman served as Byers' first lieutenant and alter ego on the street. ECF 394 at 32-33. To aver he was just a "middleman" is to blink reality. Goodman's central role readily explains why he was sentenced at a higher level. For these reasons, Goodman cannot claim that any difference in the sentence he received and the sentences of Cornish, Pearson, and Randle is somehow an "extraordinary and compelling" circumstance. As this Court found, because Goodman was just as culpable as Byers, he rightly received the same sentence as Byers.

Third, while Goodman argues that his rehabilitation warrants compassionate release, this claim is also insufficient. Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction. 28 U.S.C. § 994(t). And given that Goodman has not articulated any other valid basis under 1B1.13 for compassionate release, any rehabilitative efforts he might highlight become a moot point. While his efforts at rehabilitation are to be commended, they cannot carry the day on this motion. In the absence of any other valid ground under 1B1.13, this Court must disregard Goodman's arguments about his rehabilitation.

In sum, Goodman has failed to carry his burden to demonstrate any valid "extraordinary and compelling" circumstance. As such, his motion must be denied.

**C.    Goodman Has Failed To Demonstrate The 3553(a) Factors Militate In Favor Of Release**

Alternatively, even if Goodman could prevail on the "extraordinary and compelling" prong, his motion still fails under the 3553(a) factors.

Compassionate release can only be granted where a court finds the exercise of its discretion to reduce the inmate's sentence is warranted according to the factors set forth in 18 U.S.C. § 3553(a). As this Court has noted, the grant of compassionate release should be "rare" and not routine. *United States v. Horton*, No. CR ELH-19-115, 2023 U.S. Dist. LEXIS 82897, 2023 WL 3390910, at *8 (D. Md. May 10, 2023) (citing *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) and *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)). It should be reserved for those instances where post-sentencing circumstances truly merit it, or the else the salutary benefits of finality in criminal sentencing become meaningless.

In assessing the various 3553(a) factors, the court must consider:

(A) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) the need to afford adequate deterrence to criminal conduct;

(C) the need to protect the public from further crimes of the defendant; and

(D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

In considering these factors, the Fourth Circuit has made clear that the important interests of deterrence and respect for the law would not be served if a person were released after serving far less than the original sentence imposed. *See United States v. Jenkins*, 22 F.4th 162, 171 (4th Cir. 2021) (affirming denial of compassionate release based in part on the notion that the defendant "had served less than half of his 10-year sentence"); *accord United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2020) (holding that "[t]he district court was entitled to consider the amount of time [defendant] already had served as one factor in the § 3553(a) analysis").

Here, these factors demonstrate that relief should not be granted.

First, as to the seriousness of the offense and the need to provide just punishment, the Court has already found that this was a serious offense. ECF 394 at 32-33. With good reason. The defendant was engaged in a conspiracy of murder-for-hire, specifically to murder a witness. His associate Byers was already in prison awaiting trial for a different murder. It is a dramatic understatement to say these are serious crimes. There can be no more serious result of criminal activity than the taking of a life. Goodman orchestrated and achieved that here and therefore earned a life sentence. That 3553(a) factor alone should be sufficient and dispositive to deny relief.

Second, the need for deterrence further underscores why this motion should be denied. In *United States v. Devine*, 40 F.4th 139, 151 (4th Cir. 2022), in affirming the imposition of consecutive life sentences for a murder, the court emphasized the critical role of deterrence in sentencing, particularly in cases involving violent crimes such as gang-related murders. The court underscored that a sentence must be sufficient to dissuade impressionable individuals from joining criminal organizations and engaging in violent acts, thereby countering any perception that such conduct could go unpunished. *Id.* This rationale is equally compelling in Goodman's case, particularly when the case involved the murder of a witness. Such offenses strike at the heart of the judicial system. Such crimes not only endanger public safety but also seek to intimidate or eliminate individuals essential to the administration of justice. In this context, the need to afford adequate deterrence is critical. Goodman's sentence which reflects strong deterrence is essential not only to prevent further criminal conduct by the defendant, but also to send a powerful message that witness tampering and conspiracies to murder will be met with the full force of the law.

Third, regarding the need for promoting respect for the law and adequate deterrence, this Court sentenced the defendant to multiple terms of life, and to date the defendant has served approximately 18 years of that sentence. It would do little to promote respect for the law if this Court simply reversed course now and granted release. Respect for the law demands the motion be denied. Indeed, it must be noted that Congress ordained that life sentences were mandatory for several of Goodman's convictions. Great pause should be given therefore before granting Goodman relief and undermining the congressionally-mandated sentencing scheme that applies here. *United States v. Goodall*, 2020 WL 4262277, at *4 (D. Md. July 24, 2020) (denying compassionate release because while 3582(c) may technically permit a resentence below a mandatory minimum, "the presence of such a sentence is indicative of the seriousness of the offense and ought to be considered when determining whether the goals of punishment and deterrence have been fulfilled").

Fourth, while Goodman has maintained a clean disciplinary record while in the Bureau of Prisons, this alone does not justify outright release. Granting a compassionate release motion on this basis could undermine the seriousness of the offense, fail to promote respect for the law, and diminish the sentence's deterrent effect. *See United States v. Wright*, 991 F.3d 717,  (6th Cir. 2021) (the district court did not abuse its discretion in denying relief from life sentences for an inmate who has served 19 years because, despite his rehabilitative efforts, he facilitated a "cold-blooded killing"). Moreover, a lack of disciplinary infractions in prisons is to be expected; it is therefore not dispositive by itself. Although rehabilitation is a legitimate sentencing consideration under 18 U.S.C. § 3553(a)(2)(D), it must be balanced against the other statutory factors, including the need for just punishment, deterrence, and protection of the public. In

Goodman's case, the goal of rehabilitation cannot and does not outweigh the gravity of the offense or the imperative need for accountability and deterrence.

In sum, there is nothing in Goodman's motion which provides any basis to reverse course now. The motion should be denied.

## CONCLUSION

The government respectfully requests that the Court deny the defendant's motion.

Respectfully submitted.

Kelly O. Hayes
United States Attorney

___/s/_____
Jason D. Medinger
Assistant United States Attorney
U.S. Attorney's Office
36 S. Charles Street, 4th Flr.
Baltimore, MD 21201
Tel. 410-209-4800

## CERTIFICATE OF SERVICE

I HEREBY certify that the foregoing Response was filed via ECF and thereby served on counsel of record.

___/s/_____
Jason D. Medinger
Assistant United States Attorney